UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>          Plaintiff,<br><br>  v.<br><br>PETER TRAN,<br><br>          Defendant.<br>_____/ | No. CR 97-00239 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re:** Motion for Return of Property |

       Peter Tran, former defendant in the above-captioned criminal case, filed a motion for compensation for wrongfully destroyed property under Federal Rule of Criminal Procedure 41(g). Tran seeks approximately 20 million dollars in compensation for cargo seized and destroyed by the United States government in connection with the now-dismissed weapons smuggling indictment against Tran and former co-defendant, Curtis Lynn Debord. Having considered the parties' submissions and arguments, and for the reasons set forth below, the court enters the following memorandum and order denying the motion.

BACKGROUND

       The cargo at issue in this case consists of the contents of two shipments of alleged weapons parts recovered during the course of a federal investigation conducted by the United States Customs Service ("Customs"). Docket No. 357-2 (Order Denying Defendant's Motion for Return of Property Without Prejudice ("Order Denying Motion")) at 2. The Customs investigation that led to the seizure of the containers was an undercover sting operation targeting importers of illegal weapons

from Vietnam. *Id.* Importing "defense articles" from Vietnam is prohibited by regulations promulgated by the Department of State pursuant to the Arms Export Control Act ("AECA"), codified at 22 U.S.C. § 2778. *Id.*

Three containers were delivered to Roseville, California in the Spring of 1996 and two containers, containing weapons components apparently destined for Mexico, shipped to Long Beach California in January 1997. Order Denying Motion at 2. The cargo of these last two containers is at issue here. On March 6, 1997, Customs seized the containers. *Id.* at 3. The contents of the containers included "defense articles," namely parts for the following: M16 rifles, M1A1 semiautomatic carbines, M60 light machine guns, M79 grenade launchers and M29 mortars. Docket No. 359 (Renewed Motion for Return of Property ("Renewed Motion")), Renewed Motion, Exh. 1 (Various Documents) at 17-18 (ATF Report).

On August 12, 1997, Tran was indicted for crimes relating to the unlawful importation of weapons. Order Denying Motion at 1. The indictment was ultimately dismissed with prejudice on June 28, 2005. *Id.* at 1-2. The United States appealed the dismissal, but later voluntarily dismissed the appeal on March 2, 2006. *Id.* at 2. At some time before March 2001, however, the government intentionally and unlawfully destroyed the containers and their contents. *Id.* at 3.

On September 15, 2006, Tran filed an Ex-Parte Application for Return of Property Following Dismissal, which the court treated as a motion for return of property under Federal Rule of Criminal Procedure 41(g). *Id.* at 1; Docket No. 357-1 (Ex-Parte Application for Return of Property Following Dismissal). On December 12, 2006, the court denied the motion without prejudice. Order Denying Motion. The court suggested that should Tran refile the motion, he should present evidence that he was the owner of the cargo; offer a more precise valuation of the property; and brief the court on the issue of whether the cargo was contraband. Order Denying Motion at 6, 8-9. In the same order, the court suggested that in opposition, the United States should brief the issue of whether the cargo was contraband and whether the containers holding the cargo were also contraband. *Id.* at 8-9.

On July 8, 2009, Tran filed a Renewed Motion for Return of Property. Renewed Motion. On August 27, 2010, this court ordered the United States to address the issue of whether Tran had a

2

general license to temporarily import weapons into the United States, as opposed to merely showing that Tran lacked a specific permit exempting him from the ban on the importation of weapons from Vietnam. Docket No. 360 (Order) at 1. The United States submitted evidence to this court that Tran neither requested nor received a permit to import defense articles from Vietnam as relics or curios. *See* Docket No. 364 (Response to Court Order of 8/27/10 ("Response to Order")), Exh. 1 (Suchan Decl.) at 3. The United States also offered the following evidence: bills of lading for the goods arriving in Long Beach along with falsified list of contents, Docket No. 357-4 (Exhibit C), Exh. 10-12 (collectively "Bills of Lading"); a declaration from a co-conspirator whose role would have been to launder the weapons once they arrived in the United States, Exhibit C, Exh. 15 (Thao Dinh Le Decl.); and a recorded conversation Tran had with the undercover agent regarding both the illegality of weapons importation and the need for deceit in order to ship the goods into the United States, Docket No. 357-5 (Exhibit D), Transcript at 5-6.

Tran concedes, and in fact proffers evidence, that the shipping containers in question contain components for weapons and that the cargo was shipped from Vietnam. Renewed Motion, Exh. 1 (Various Documents) at 17-18 (ATF Report); ¶ 32. Tran argues nonetheless that the cargo in question is not contraband because it remained in Laos, a non-proscribed country, for more than five years after it was given to Laos by Vietnam in 1976. Renewed Motion, Exh. 1 (Various Documents) at 20 (Sayavong Letter). Attaching a map showing Laos bordered by Burma, Cambodia, China, Thailand, and Vietnam, Tran asserts that the cargo is not derivative contraband because it originated in landlocked Laos and merely moved through Vietnam out of necessity on its way to Mexico, not the United States. Renewed Motion ¶¶ 32-33. Tran asserts that he was unaware that the cargo would pass through the United States on its way to Mexico. *Id.* ¶ 34.

LEGAL STANDARD

The Ninth Circuit standard for the return of property under Federal Rule of Criminal Procedure 41(g) is stated in *United States v. Martinson* as:

> [W]hen the property in question is no longer needed for evidentiary purposes, either because trial is complete, the defendant has pleaded guilty, or, as here, the

3

> government has abandoned its investigation, the burden of proof changes. The person from whom the property is seized is presumed to have a right to its return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property. In such a case, . . . even if the seizure was lawful the government must justify its continued possession of the property by demonstrating that it is contraband or subject to forfeiture. A district court has both the jurisdiction and the duty to return the contested property once the government's need for it has ended.

809 F.2d 1364, 1369-1370 (9th Cir. 1987) (internal citations and quotation marks omitted). A motion for return of property may be denied, however, "if the defendant is not entitled to lawful possession of the seized property, the property is contraband, or subject to forfeiture or the government's need for the property as evidence continues." *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991). Because the case against Tran has been dismissed, the government has no further evidentiary need to retain the property. Accordingly, the government bears the burden of showing that the cargo seized is derivative contraband per the AECA.

The AECA vests in the president the power to define which weapons will constitute "defense articles," establish a permitting system to regulate commerce in defense articles and to proscribe trade in defense articles with countries or regions. "Articles on the U.S. Munitions Import List will not be imported into the United States except pursuant to a permit . . . ." 27 C.F.R. § 447.41(a). The importation of defense articles from Vietnam, a proscribed region, requires a separate permit pursuant to 27 C.F.R. § 447.52(a). It is unlawful to possess defense articles imported without a permit, and a person in possession of such articles is not entitled to either return of or compensation for such seized articles. *Van Cauwenberghe*, 934 F.2d at 1061; 22 U.S.C. § 2778(c).

DISCUSSION

Although the criminal charges against Tran have been dismissed, the cargo may still be derivative contraband by virtue of its unlawful importation from Vietnam, a proscribed country per the AECA regulations. It is unlawful to import defense articles from a proscribed country without a permit from the Department of State. 22 U.S.C. § 2778; 27 C.F.R. § 447.52(a). The seized property is contraband if (1) the property fits the definition of "defense articles" under the AECA regulations, (2) the articles were imported from a proscribed country, specifically Vietnam, and (3) the articles

4

were imported to the United States without a permit. The government carries the burden of proof with respect to all three elements.

I.        Seized Property's Status as "Defense Articles"

The federal regulations designating which components qualify as defense articles under the AECA are listed in 27 C.F.R. § 447.21. Italicized in relevant part, the list includes:

> THE U.S. MUNITIONS IMPORT LIST
>
> CATEGORY I -- FIREARMS
>
> (a) *Nonautomatic and semiautomatic firearms*, to caliber .50 inclusive, combat shotguns, and shotguns with barrels less than 18 inches in length, and *all components and parts for such firearms*.
>
> (b) *Automatic firearms and all components and parts for such firearms* to caliber .50 inclusive.
> . . .
>
> (d) Firearms silencers and suppressors, including *flash suppressors*.
>
> CATEGORY II -- ARTILLERY PROJECTORS
>
> (a) Guns over caliber .50, howitzers, *mortars*, and recoilless rifles.
> . . .
>
> (c) *Components, parts, accessories, and attachments for the articles in paragraphs (a)* and (b) of this category, including but not limited to mounts and carriages for these articles.
> . . .
>
> CATEGORY IV -- LAUNCH VEHICLES, GUIDED MISSILES, BALLISTIC MISSILES, ROCKETS, TORPEDOES, BOMBS AND MINES
>
> (a) Rockets (including but not limited to meteorological and other sounding rockets), bombs, *grenades*, torpedoes, depth charges, land and naval mines, as well as *launchers* for such defense articles, and demolition blocks and blasting caps.
> . . .
>
> (h) *All specifically designed components or modified components, parts, accessories, attachments, and associated equipment for the articles in this category*.

*See* Renewed Motion, Exh. 1 (Various Documents) at 17-18 (ATF Report). The confiscated property, which Tran admits included components for nonautomatic and semiautomatic firearms, flash suppressors, mortar accessories, and grenade components, falls within the definition of defense

5

articles provided by the relevant regulations. Although Tran disputes the characterization of certain items, all items, as identified by either Tran or the United States, qualify as defense articles.

Importation as collectors' items or curios may override the characterization as proscribed defense articles for the purposes of AECA, provided that the importer receive the relevant permit to do so. *See* 27 C.F.R. § 447.52(e). The United States filed a declaration showing that Tran neither applied for nor received a permit to treat the defense articles as relics or curios for importation purposes. Suchan Decl. at 3. Accordingly, the court finds that the United States has carried its burden of demonstrating that the cargo consists of defense articles within the meaning of the AECA regulations.

II.     Exportation from Vietnam

Tran concedes that the cargo passed through Vietnam and was shipped from Saigon Port. Renewed Motion ¶ 32. Tran argues, however, that transporting the defense articles through Vietnam was necessary in order to get the cargo via oceanic shipping from landlocked Laos to Mexico. *Id.* ¶ 33. The regulations draw no distinction between defense articles originating in a proscribed region and defense articles shipped to the United States aboard a vessel departing from a proscribed region such as Vietnam. The regulation states: "A defense article authorized for importation under this part may not be shipped on a vessel, aircraft or other means or conveyance which is owned or operated by, or leased to or from, any of the countries or areas covered by paragraph (a) of this section." 27 C.F.R. § 447.52(d). Indeed, section 447.52(d) offers no exception for circumstances where the defense articles move through a proscribed area en route to the United States. Furthermore, Laos is bordered by Burma, Cambodia, China, Thailand, and Vietnam, of which only Vietnam is proscribed under 27 C.F.R. § 447.52(a). Thus, Tran's argument that he was without option in terms of moving the cargo via oceanic shipping is unavailing.

Tran also asserts that although the goods originated in Vietnam, they were stored for five years in a non-proscribed area, Laos, and are therefore eligible for legal importation under 27 C.F.R. § 447.52(e) which states:

> Applications for permits to import articles that were manufactured in, *or have been in*, a country or area proscribed under this section may be approved where

6

> the articles are covered by Category I(a) of the Import List . . . are importable as curios or relics . . . and meet the following criteria:
>
> (1) The articles were manufactured in a proscribed country or area prior to the date, as established by the Department of State, the country or area became proscribed, or, were manufactured in a non-proscribed country or area; and
>
> (2) The articles have been stored for the five year period immediately prior to importation in a non-proscribed country or area. (emphasis added).

Section 447.52(e) confers only the right to seek the permit, not a self-executing right to import goods where the conditions for granting the permit might have been satisfied. Because Tran never received any permit pursuant to section 447.52 to import defense articles from Vietnam as curios or otherwise, the alleged storage of the cargo in Laos prior to their importation is irrelevant. Suchan Decl. at 3.

III.   Importation to the United States

"[T]he word importation means the bringing of goods within the jurisdictional limits of the United States with the intention to unlade them." *United States v. Field & Co.*, 14 U.S.Cust.App. 406 (T.D. 42052, 1927). There is no dispute that the defense articles were brought within the territorial jurisdiction of the United States and actually unladed. Although Tran asserts that he had no intention that the goods be unladed within the United States, the bills of lading show that the goods were sent from Saigon Port to Long Beach, and were fraudulently identified as parts for sewing machines, machine parts and nuts and textile fabric cleaning tools. Bills of Lading. In addition, the United States submitted sworn statements indicating that DeBord had made arrangements to create a false record of consignment delivery of 1,007 M-1 rifles with an authorized firearms importer in Oklahoma. Thao Dinh Le Decl. at 1. Tran offers no evidence of his own to support his assertion that the cargo's presence in the United States was an honest mistake. This court finds that the cargo was brought within the United States with the intention that it be unladed from the ship, satisfying the legal requirements for importation.

Tran asserts that although the defense articles were unladed, they were not imported to the United States because their final destination was Tijuana, Mexico rather than Long Beach, California. Even if the defense articles were intended only for temporary importation, they would be

7

defined as "in transit" and fall under Department of State regulation, codified at 22 C.F.R. § 123.1, which requires a permit for temporary importation. The government submitted a declaration stating that: "There is no record that . . . the Department of State, in any matter involving [Tran], approved . . . a waiver being granted for the *temporary import*, temporary export or permanent export of defense articles or defense services to or from Vietnam." Suchan Decl. at 3 (emphasis added). Tran has offered no evidence of a permit to rebut the government's assertion that no permit was in fact issued to Tran.

Defense articles originating from Vietnam, a proscribed country, without a permit are prohibited admission into the United States, regardless of any intention on the part of the owner to later export the goods. 19 C.F.R. § 18.21(b) ("Narcotics and other articles prohibited admission into the commerce of the United States shall not be entered for transportation and exportation and any such merchandise offered for entry for that purpose shall be seized . . . ."). Because, Tran possessed neither a permit for the importation of defense articles from Vietnam nor a permit for the temporary importation of defense articles from Vietnam, the cargo was contraband and Tran is not entitled to return of the items nor return of their value.

CONCLUSION

The United States was unable to sustain its criminal case against Tran, but the dismissal of criminal charges created only a rebuttable presumption of return of seized property. *Martinson*, 809 F.2d at 1369-1370. The United States has met its burden of proof required to rebut that presumption by proving the cargo to be contraband to which no person has any compensable property right. *See*, *id.* Because the cargo is contraband and supports no right to compensation, the court will not reach the questions of ownership or appropriate remedies for destroyed property.

Accordingly, Tran's Renewed Motion for Return of Property under Federal Rule of Criminal Procedure 41(g) is DENIED.

IT IS SO ORDERED.

Dated: January 7, 2011

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

9